SPOOR-LASHER COMPANY, INC., Appellant, *v.* NEWBURGH GAS & OIL COMPANY, INC., and Another, Respondents.

Second Department, May 24, 1935.

*Joseph A. McCabe,* for the appellant.

*George V. L. Spratt,* for the respondents.

PER CURIAM. The lease contains no express provision as to which of the parties is responsible for taxes. Ordinarily in such case, the law presumes the landlord will pay. When the lease permits the erection of buildings removable by tenant at the end of the term and there is no statement of the kind or cost of the improvements and there is no provision as to taxes, it may be presumed the tenant is to pay the taxes, for it is impossible for the landlord to tell what the burden of the tax is to be and, therefore, he has no basis for rent regulation in that connection. Here (1) at the time the lease was executed the tanks had either been

erected or plans therefor approved by the landlord. It knew what the tax burden would be and must have arranged the rent to include taxes accordingly. (2) One of the provisions permits erection of any other buildings upon written permission of the landlord, which will be given *where it does not affect the conduct of the business of the landlord or the insurance rate affecting the premises of the landlord in the neighborhood.* Not a word about taxes. (3) Clause 21 contains the only reference to taxes and gives the tenant the right to pay the same if the landlord defaults, and to deduct same from the rent. The clause mentions taxes " assessed against the premises." Nothing to indicate that " premises " · excluded the tanks in question. (4) The commencement of this action for reformation, in which plaintiff concedes on the appeal it did not make out a case on the facts, indicates that the landlord construed the lease as expressive of an intent of the parties that the landlord should pay the taxes on the tanks. (See ¶ 8 of amended complaint.) The question now raised by the landlord was an afterthought. (See opinion of CLOSE, J., on reargument.*) Under the circumstances, it must have been the intention of the parties that the landlord was to pay the taxes on the tanks.

LAZANSKY, P. J., HAGARTY and DAVIS, JJ., concur; TOMPKINS, J., with whom SCUDDER, J., concurs, dissents and writes for reversal.

TOMPKINS, J. (dissenting). I think it was the intention of the parties that the landlord should pay the taxes on the land, that

---

* Opinion of Mr. Justice CLOSE on reargument.

CLOSE, J. The motion for reargument is denied. The lease provides that if the landlord (the plaintiff here) shall default in the payment of any taxes assessed against the premises, the tenant may pay the same and the amount may be applied by the tenant upon any rent due or to become due.

The landlord now argues that notwithstanding this provision, the tenant must pay the taxes against any structures placed thereon by the tenant, if the title remains in the tenant. I am unable to agree. The assessment is against the real estate as such. (Tax Law, § 2, subd. 6.) The word " premises " as used in the lease must be construed to mean the land and buildings erected thereon. (*Appeal of Hilton*, 116 Penn. St. 351; 9 Atl. 342; *Steinhardt* v. *Burt*, 27 Misc. 782; *Winlock* v. *State*, 121 Ind. 531, 533.)

I am confirmed in my conclusion that the landlord covenanted to pay the taxes by the clause in the lease giving him control over the erection of structures upon the land. The authorities cited by the plaintiff, such as *People ex rel. H. R. Day Line* v. *Franck* (257 N. Y. 69), are not in point. There the question was between the taxing authority and the owner of the building. Here we have an express covenant by the landlord to pay.

The defendants' proposed findings will be held ten days to permit the plaintiff to submit requests.

the tenant should pay the taxes separately assessed on the tanks, and that the provision in paragraph 21 of the lease providing " if the landlord shall default in the payment of any taxes, assessed against the *premises*," means the demised premises as they were at the time the lease was made, and does not include the tanks erected by the tenant on said premises after the execution of the lease, which tanks, under paragraph 8 of the lease, are to remain the property of the tenant and can be removed by it at the end of the lease.

In the case of *People ex rel. H. R. Day Line* v. *Franck* (257 N. Y. 69) the relator had erected a dock and other structures upon lands owned by the Commissioners of Palisades Interstate Park at Bear Mountain, under a written agreement which did not reserve to the relator a right of removal or confer upon it the ownership of the structures. The agreement did provide that at the end of twenty years the dock " shall revert to and become the property of the party of the first part " (the Commissioners). The structures were assessed by the town assessors against the relator, and in a certiorari proceeding to review the assessments the Court of Appeals held that the relator did not own the structures and was not assessable therefor, the court, by KELLOGG, J., saying: " The Tax Law * * * defines ' land,' ' real estate ' and ' real property ' to include ' all buildings and other articles and structures,' as well as ' all wharves and piers ' erected upon land above or under water. In cases involving tax assessments, therefore, it matters not that, at the common law, a building erected upon the lands of another, pursuant to an agreement with the landowner that at the end of a term the builder may remove it, is sometimes classed as personal property belonging to the builder. [*Smith* v. *Benson*, 1 Hill, 176.] The building is real estate assessable as such to the builder as its owner, while the land upon which it stands remains subject to assessment against the landowner. (*People ex rel. Abrams* v. *Commrs. of Taxes*, 52 N. Y. 659; *People ex rel. Van Nest* v. *Commrs. of Taxes*, 80 N. Y. 573.) However, such a case presents an exception, by force of the statute, to the ordinary rule, that ' when structures are erected by persons not owners of the land, they become part of the realty, and, as such, the property of the landowner.' (*People ex rel. International Nav. Co.* v. *Barker*, 153 N. Y. 98.) To establish the exception, clear and explicit language must be employed, indicating with precision that the builder retains the right of removal and remains the owner. ' It requires an agreement to be expressed in order to prevent the operation of this rule.' (*People ex rel. International Nav. Co.* v. *Barker*,

153 N. Y. 98, 101.)" And then the court proceeds to say that, because under the agreement the relator was not to be regarded as the owner of the structures to be erected by it and did not reserve the right to remove them, they were assessable against the owner.

The converse of this proposition, it seems to me, must be true, namely, that where the lease or agreement expressly provides that the structures erected are to be the property of the tenant and to be removable by him, they are assessable, not against the landowner, but against the lessee.

In the old case of *People ex rel. Muller* v. *Board of Assessors* (93 N. Y. 308) and in the *International Navigation Case* (153 id. 98), cited by Judge Kellogg, the same rule was enunciated. In the last named case the court said: " If the right of removal is reserved to the lessee in a lease, then, in such a case, he will be regarded as an owner of real estate for the purpose of taxation. (*People ex rel. Van Nest* v. *Commissioners of Taxes*, 80 N. Y. 573.)"

In the case at bar it was expressly agreed by the parties, and stipulated in paragraph 8 of the lease, that the " movable tanks and personal equipment " shall not belong to the landlord, and, inferentially, of course, that they were to remain the property of the tenant, with the right to remove them at the end of the lease.

These tanks are not even attached to the freehold. They merely rest upon it and can be removed without in any wise destroying the freehold — more readily, even, than a silo which rested on concrete and was attached by a chute to the barn on the premises and which had been held personal property. (*Craine Silo Co., Inc.,* v. *Alden State Bank*, 218 App. Div. 263.) The movable tanks in question were, in the year 1931, assessed, separately from the land, against the Newburgh Gas & Oil Company, Inc., one of the respondents, the original lessee, and the tax levied thereon was the sum of $265, which was paid by that company. The trial court so found. The court also found that in the years 1932, 1933 and 1934 the movable tanks were separately assessed for the sum of $8,700, being described on the assessment roll as located on " Land east of railroad owned by Spoor Lasher and leased by Newburgh Gas & Oil Co. and included in 12 plus acres assessed to Spoor-Lasher Company, Inc.," while the land was assessed for $95,400. So that these assessments of $8,700 annually for all of the four years in question were against the tanks of the tenant and not against the owner's land.

It seems to me that the separate assessments of $8,700 for the years 1932, 1933 and 1934 against the movable tanks were legal; that, inasmuch as the lessee reserved to itself the ownership of the

tanks with the right to remove them, the tax levied on such assessments is the obligation of the tenant, and that the judgment dismissing the complaint and in favor of defendant Newburgh Gas & Oil Company, Inc., on its counterclaim for the 1931 tax, should be reversed and judgment given in the plaintiff's favor against defendant Sun Oil Company, which has been in possession of the demised premises since July 1, 1931, under the lease made to its codefendant, for the taxes paid by the plaintiff on the tanks for the years 1932, 1933 and 1934.

SCUDDER, J., concurs.

Judgment affirmed, with costs.